Micah L. Bailey, SBN 248384
**PURDY & BAILEY, LLP**
12520 High Bluff Drive, Suite 220
San Diego, California 92130
Telephone: (858) 564-0136
Facsimile: (858) 564-0142
mbailey@purdybailey.com

Attorneys for Plaintiff ELECTRONIC ENVIRONMENTS CO, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC ENVIRONMENTS CO, LLC, a Massachusetts Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>THE OASIS FUND, LLC, a California Limited Liability Company, ANDREY KUKUSHKIN, an Individual, FELIX KUKUSHKIN, an Individual, ALEXEY DYUPIN, an Individual, and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.: _____<br><br>**ELECTRONIC ENVIRONMENTS CO, LLC'S COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT**<br>2.  **COMMON COUNT (GOODS AND SERVICES RENDERED)**<br>3.  **FRAUD (INTENTIONAL MISREPRESENTATION)**<br>4.  **FRAUD (CONCEALMENT)**<br>5.  **FRAUD (PROMISSORY FRAUD)**<br>6.  **NEGLIGENT MISREPRESENTATION**<br>7.  **CONSTRUCTIVE TRUST**<br>8.  **DECLARATORY RELIEF**<br>9.  **FRAUDULENT TRANSFER [CIV.C §3439.04(a)(1)]**<br>10. **FRAUDULENT TRANSFER [CIV.C §3439.04(a)(2)(A)**<br>11. **FRAUDULENT TRANSFER [CIV.C §3439.04(a)(2)(B)**<br>12. **FRAUDULENT TRANSFER [CIV.C §3439.05]**<br><br>**[JURY TRIAL REQUESTED]** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

## I.

## <u>PARTIES</u>

    1.     Plaintiff ELECTRONIC ENVIRONMENTS CO, LLC ("EEC") is, and at all times relevant to this action was, a Massachusetts limited liability company, duly organized and existing

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

under the laws of the State of Massachusetts, with its principal place of business in Marlborough, Massachusetts, and authorized and doing business in California. At all relevant times, EEC was duly licensed with the California Contractor's State License Board to perform the work referenced herein as an electrical (C10), general building (B), and warm-air heating, ventilating, and air-conditioning (C22) contractor under CSLB License #1019304.

2.     Defendant THE OASIS FUND, LLC ("OASIS") is, and at all times relevant to this action was, a Limited Liability Company, duly organized and existing under the laws of the State of California, with its principal place of business in Sacramento County, California.

3.     Defendant ANDREY KUKUSHKIN ("A. KUKUSHKIN") is, and at all times relevant to this action was, an individual residing at ▮▮▮▮▮▮▮▮▮▮, San Francisco, San Francisco County, California and a purported 27.92% member of OASIS as of November 1, 2019.

4.     Defendant FELIX KUKUSHKIN ("F. KUKUSHKIN") is, and at all times relevant to this action was, an individual residing ▮▮▮▮▮▮, Calistoga, Napa County, California and a purported 9.23% member of OASIS as of November 1, 2019.

5.     Defendant ALEXEY DYUPIN ("DYUPIN") is, and at all times relevant to this action was, an individual believed to reside at ▮▮▮▮▮▮▮▮▮, Moscow, Russia and the purported lender for OASIS.

6.     EEC is unaware of the true identity, nature and capacity of each of the defendants designated herein as DOES 1 through 50.  EEC is informed and believes and thereon alleges that each of the defendants designated herein as a DOE are individuals and entities who are agents and employees of each of the remaining Defendants, and in doing the things alleged hereinafter was acting within the scope of its agency and employment and with the authority of each of the remaining Defendants.  Upon learning the true identity, nature and capacity of the DOE defendants, EEC will amend this Complaint to allege their true names and capacities.

7.     EEC alleges on information and belief that at all material times herein alleged that the Defendants, and each of them, were agents, servants and employees of the other Defendants, and each of them.

**COMPLAINT**

**II.**

**JURISDICTION AND VENUE**

8.      The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. §1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs and EEC, OASIS, A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1-50 (collectively, "DEFENDANTS") are citizens of different states.

9.      This Court has personal jurisdiction over DEFENDANTS because they regularly conduct business and/or reside in California. DEFENDANTS therefore have sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court in compliance with traditional notions of fair play and substantial justice.

10.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because OASIS conducts business and owns real property in this District. Furthermore, a substantial portion of the events or omissions giving rise to the claims for relief stated in this Complaint occurred in and/or emanated from this District.

**III.**

**ALTER EGO**

11.      EEC alleges further on information and belief that, and at all relevant times, there existed a unity of interest and ownership between OASIS, A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1 to 50, such that any individuality and separateness between the individual and corporate defendants has ceased and that adherence to the fiction of the separate existence of the DEFENDANTS would permit an abuse of the corporate privilege, would sanction fraud and promote injustice, and would unfairly limit EEC's recovery solely to the assets of the business entities.

12.      DEFENDANTS engaged in commingling of funds between the entities named herein, held out business entities as liable for the debts of another, held identical equitable ownership in their business entities, used the same offices and employees, used business entities as a mere shell for others, inadequately capitalized their entities, disregarded corporate formalities, named identical managers, directors and officers, and engaged in conspiratorial conduct intended

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

3

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

to evade creditors, including EEC.

13.     The individual defendant named herein dominated and controlled the corporate entity, a unity of interest and ownership existed between the individual defendants and the business entities, the business entities were mere shells and conduits for the individual defendants' affairs, and the individual defendants used the business entities' assets as their own; and recognizing the separate existence of the corporation would promote injustice.

14.     Therefore, A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1 to 50 are the alter egos of OASIS and OASIS is the alter ego of the other business entities and/or individuals, the corporate structure was not properly maintained, and/or there existed a unity of financial interest between the business entities and the individuals, thereby warranting piercing of the corporate veil which unfairly and unjustly shrouds the individual defendants.

## IV.

## CIVIL CONSPIRACY

15.     DEFENDANTS, and each of them, took these and other overt acts pursuant to, and in furtherance of, said conspiracy, and furthered the objective of the conspiracy by cooperating with, lending aid, and lending encouragement to the acts of each other.

16.     As a direct and proximate result of the DEFENDANTS' conspiracy, EEC has been irreparably harmed and have sustained substantial monetary damages and are jointly and severally liable for all of the causes of action specifically detailed below as a result of their conspiracy.

17.     As set forth below, DEFENDANTS, and each of them, knowingly and willfully conspired and agreed amongst themselves, or in the alternative, later joined the ongoing conspiracy and fully ratified all past actions and the purpose of the conspiracy to defraud EEC and otherwise cover-up and conceal their inability to pay for the work that they expressly requested that EEC perform.

## V.

## GENERAL ALLEGATIONS

18.     EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

**COMPLAINT**

19.     On June 8, 2018, OASIS filed Articles of Organization with the California Secretary of State, indicating its structure as a "Manager Managed" Limited Liability Company, with a single Manager.

20.     On December 3, 2018, the City of Sacramento ("the City") approved a Minor Modification to an existing Conditional Use Permit ("CUP"), which authorized OASIS to construct a cannabis cultivation, manufacturing, and distribution project ("the Project") at 5849 88th Street, Sacramento, California 95815 ("the Property").

21.     Attorney John Sinadinos ("Sinadinos"), OASIS's attorney and 0.32% owner, serves as the Project applicant and point of contact with the City for the Project to this day.

22.     On or about February 25, 2019, OASIS purchased a 66.667% interest in the Property, while Next Phase Holdings, LLC, a separate California Limited Liability Company partly owned by A. KUKUSHKIN and DOES 1 to 50, purchased the remaining 33.333% interest.

23.     Based upon information and belief, as of November 1, 2019, the members of OASIS included: A. KUKUSHKIN (27.92%), F. KUKUSHKIN (9.23%), Andrey Muraviev ("Muraviev") (a billionaire who resides in Russia) (27.92%), Sinadinos (0.32%), and DOES 1-50.

24.     On October 9, 2019, A. KUKUSHKIN, the managing member of OASIS, was indicted by the United States ("the Government") along with co-conspirators Igor Fruman ("Fruman"), Lev Parnas ("Parnas"), and David Correia ("Correia") for allegedly delivering political contributions they received from Russia to US-based politicians, in an effort to build a "cannabis empire" in the United States in United States of America v. Lev Parnas, et al., United States District Court, Southern District of New York, 19-CR-00725-JPO ("the Criminal Case").

25.     The Government alleged in the October 9, 2019 Indictment, "Beginning in or about July 2018, LEV PARNAS, IGOR FURMAN, DAVID CORREIA, and ANDREY KUKUSHKIN, the defendants, made plans to form a recreational marijuana business that would be funded by Foreign National-1 and required gaining access to retail marijuana licenses in particular states, including Nevada (the "Business Venture"). In early September 2018, PARNAS, FRUMAN, CORREIA, KUKUSHKIN, and Foreign National-1 met in Las Vegas, Nevada, to discuss the Business Venture. . .  Shortly after that meeting, PARNAS, FRUMAN, CORREIA, and

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

KUKUSHKIN began to formalize the Business Venture with Foreign National-1 and fund their lobbying efforts, but took steps to hide Foreign National-1's involvement in the Business Venture, including any political contributions associated with the Business Venture, due to, in KUKUSHKIN's words, 'his Russian roots and current political paranoia about it.'"

26.     The Government further alleged in the October 9, 2019 Indictment, "Moreover, subsequent communications between Foreign National-1, and ANDREY KUKUSHKIN, LEV PARNAS, IGOR FRUMAN, and DAVID CORREIA, the defendants, confirm the defendants' use of foreign funds and, in particular, funds from Foreign National-1 - to make the donations described above. For example, on or about October 30, 2018, Foreign National-I wrote to PARNAS, FRUMAN, and KUKUSHKIN that he had "fulfilled all my obligations completely," including "500 [ for] Nevada" in order to "work on obtaining licenses [in] these states." KUKUSHKIN similarly noted in response that "Money transferred by [Foreign National-1] to [GEP] was to support the very specific people & states (per [FRUMAN's] table) in order to obtain green light for licensing. I haven't changed any rules of our engagement and was present at all the scheduled meetings with officials in Nevada." Although PARNAS, FRUMAN, CORREIA, and Foreign National-1 continued to meet into the spring of 2019, the Business Venture did not come to fruition."

27.     "Foreign National-1" was later revealed by the Government in the Criminal Case to be Muraviev.

28.     On or about July 31, 2020, OASIS purchased the remaining 33.333% of the Property from "88th Street Objective, LLC," a limited liability company that was, based upon information and belief, owned and managed by Garib Karapetyan ("Karapetyan"), who previously partnered with A. KUKUSHKIN in applying for and obtaining multiple cannabis licenses issued by the California Department of Cannabis Control ("the DCC"), including in Sacramento.

29.     EEC, a Massachusetts-based design, construction, and maintenance company doing business as "Constructiv," began, at some point in 2020, communicating with OASIS about entering into an agreement to serve as the general contractor for the Project.

30.     On October 2, 2020, in the process of EEC's assessing the viability of the Project,

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

6

Sinadinos, OASIS' attorney/minority member, sent EEC a "Cap Table" for OASIS, purportedly current as of November 1, 2019, which listed the owners of OASIS as of November 1, 2019 as including A. KUKUSHKIN, F. KUKUSHKIN, Sinadinos, Muraviev (who is believed to be a billionaire), and others, and which further represented that OASIS' "M&A Assets" totaled $30 million as of November 1, 2019.

31.     Based upon information and belief, the $30 million valuation that OASIS delivered to EEC was fraudulent and grossly overinflated.

32.     Based upon information and belief, A. KUKUSHKIN, F. KUKUSHKIN and DOES 1 to 50 prepared the Cap Table, which contained the fraudulent $30 million valuation.

33.     On the same date, October 2, 2020, Sinadinos sent EEC a set of loan documents that he had prepared for OASIS and DYUPIN dated July 31, 2020, which indicated that DYUPIN (who allegedly resides in Moscow according to the documentation) had loaned funds in the amount of $4.5 million to OASIS for the Project, which were secured by the Property through a Trust Deed (the Trust Deed was unrecorded at that time). (See Promissory Note, Exhibit 1; Loan Agreement, Exhibit 2; Unrecorded Deed of Trust, Exhibit 3).

34.     The Loan Agreement did not contain DYUPIN's signature.

35.     Notwithstanding the fact that DYUPIN purportedly loaned the funds to OASIS on or about July 1, 2020 to purchase the remaining 33.33% of the Property, DYUPIN did not record the Trust Deed to secure his "loan" until November 2, 2020, which is highly irregular conduct for a bona fide lender who is truly arm's-length from a borrower and supportive of the conclusion that the funds are actually controlled by the membership of OASIS.

36.     Based upon information and belief, EEC alleges that the Promissory Note, Loan Agreement, and Deed of Trust (collectively, the Loan Documents") were a sham intended to create a shield for OASIS' members' investments in the Project, including, but not limited to "Foreign National-1/Muraviev, as a direct response for his being named in the Indictment on October 9, 2019 as an unnamed co-conspirator and/or DOES 1 to 50, as the true source of the funding.

37.     At the time EEC received the Loan Documents and "Cap Table" from

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1    DEFENDANTS, DEFENDANTS had not disclosed the existence of the Criminal Case to EEC or

2    any impact that it may have on OASIS's ability to continue to fund the Project after construction

3    commenced.

4         38.    On or about November 30, 2020, EEC and OASIS therefore entered into a written

5    contract for EEC to serve as the general contractor on the Project ("the Agreement"). (See

6    Agreement, Exhibit 4).

7         39.    On November 2, 2020, just twenty-eight (28) days before EEC and OASIS entered

8    into the Agreement, yet *after* EEC and OASIS have begun negotiating the Agreement in October

9    2020 and ***months after*** DYUPIN purportedly loaned funds to OASIS on or about July 31, 2020,

10   Sinadinos recorded the Recorded Deed of Trust on DYUPIN's behalf. (See Recorded Deed of

11   Trust, Exhibit 5).

12        40.    By virtue of the recording of the Recorded Deed of Trust, DEFENDANTS, and

13   each of them, intended to create a shield against existing and future creditors, including EEC, by

14   falsely eliminating any equity in the Property by and through a sham set of loan documentation.

15        41.    At the time EEC entered into the Agreement, EEC was unaware of A.

16   KUKUSHKIN's October 9, 2019 Indictment, the existence of the Criminal Case, the false "$30

17   million" valuation that OASIS to delivered EEC, or the fact that OASIS has not and would not

18   repay any principal and/or interest on the "loan" at any point thereafter, and would not have

19   entered into the Agreement had it known of these facts.

20        42.    After entering into the Agreement and continuing through December 31, 2021,

21   EEC performed work on the Project and initially received regular payments for the work that it

22   performed directly from Sinadinos's Attorney Client Trust Account.

23        43.    On October 4, 2021, A. KUKUSHKIN emailed EEC, stating, "**<u>Guys, I am sure</u>**

24   **<u>you will invite me for the roof opening celebration soon! Otherwise, please excuse me but I</u>**

25   **<u>am off this chat until end of October. Resolve issues and deliver results. Iggy is in charge on</u>**

26   **<u>behalf of The Oasis Fund. Cheers, A.</u>**"

27        44.    In this October 4, 2021 email, A. KUKUSHKIN did not disclose to EEC that the

28   reason he was "off this chat until end of October" was because the Government was proceeding to

**COMPLAINT**

1    trial against him and Parnas in the Criminal Case.

2        45.    On October 13, 2021, the Government commenced trial against A. KUKUSHKIN

3    and Parnas and, on October 22, 2021, a jury found both A. KUKUSHKIN and Parnas guilty of

4    multiple felony charges.

5        46.    With no understanding or notice of the collateral Criminal Case, EEC continued to

6    perform work on the Project at the urging and solicitation of OASIS, A. KUKUSHKIN, and

7    DOES 1-50.

8        47.    To this end, EEC submitted a payment application to OASIS for services that EEC

9    and multiple approved subcontractors rendered on the Project through December 31, 2021 (i.e., ***a

10   few weeks after A. KUKUSHKIN was convicted***) in the amount of $563,780.79.

11       48.    OASIS thereafter refused to pay EEC the $563,780.79 that it owed to EEC.

12       49.    Based upon information and belief, OASIS refused to pay EEC the funds that it

13   was owed because A. KUKUSHKIN has been convicted and by that time, the Government had

14   named Muraviev as an unindicted co-conspirator in the Criminal Case, and OASIS no longer had

15   access to any additional funding to enable it to continue to pay for the services that EEC rendered

16   and which OASIS expressly requested that EEC provide.

17       50.    In March 2022, A. KUKUSHKIN was sentenced and subsequently served a year

18   and a day in federal prison because of his conviction in the Criminal Case.

19       51.    After A. KUKUSHKIN served his entire sentence, on February 8, 2023, A.

20   KUKUSHKIN was released from custody on supervised probation, which remains in effect until

21   February 17, 2026 in USA v. Kukushkin, United States District Court, Northern District of

22   California, Case No. 3:24-CR-00441-MMC.

23       52.    On March 14, 2022 (just after the Court sentenced A. KUKUSHKIN), the

24   Government issued a Superseding Indictment, officially naming Muraviev as a defendant in the

25   Criminal Case, alleging "Beginning in or about July 2018, LEV PARNAS, IGOR FURMAN,

26   DAVID CORREIA, ANDREY KUKUSHKIN, and ANDREY MURAVIEV, a/k/a "Andrey

27   Muravyov," the defendants, made plans to form a cannabis business (the "Business Venture"). The

28   defendants intended for MURAVIEV to fund the Business Venture and their initial objective was

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

9

**COMPLAINT**

to obtain the requisite licenses to operate in particular states, including Nevada. In or about September 2018, PARNAS, FRUMAN, CORREIA, KUKUSHKIN, and MURAVIEV traveled to Las Vegas, Nevada, and PARNAS, FRUMAN, and KUKUSHKIN attended a political fundraiser for a state candidate in Nevada ("Candidate-l") and pledged to contribute money to Candidate-1. While in Nevada, PARNAS, FRUMAN, CORREIA, KUKUSHKIN, and MURAVIEV discussed the terms of the Business Venture and, as MURAVIEV later wrote in a text message, "agreed on princip[les] of [their] . . . future enterprise," which included that MURAVIEV would "provide $1 million for our future enterprise" to be spent in Nevada, California, New York, and New Jersey to "obtain [] licenses [in] th[o]se states."

53. The Criminal Case remains pending against Muraviev to this day.

54. On or about April 21, 2022, EEC officially terminated the Agreement with OASIS, after months of nonpayment.

55. After that point, OASIS abandoned the Property and allowed it to fall into disrepair, which caused it to lose significant value.

56. Within the three years prior to the filing of this Complaint, EEC learned, for the first time, of A. KUKUSHKIN's Indictment, the existence of the Criminal Case, the falsity of "M&A Assets totaling $30 million," that OASIS has failed to pay down the "Loan" in any respect, or that OASIS was undercapitalized by virtue of its recording of the Recorded Trust Deed.

57. On June 8, 2023, unbeknown to EEC at the time, the City filed a separate lawsuit against OASIS for Public Nuisance, Dangerous, and Fire Code Violations in City of Sacramento v. Oasis Fund, LLC, Superior Court of California, County of Sacramento, Case No. 23CV002946, for allowing the Property to fall into disrepair ("the City Lawsuit").

58. The City alleged the continuing dilapidation that occurred to the Property and the City's ordering a fire watch, Sinadinos's role as the "Attorney for [OASIS]" and "intermediary between Fire Prevention officers and [OASIS], and multiple additional inspections and penalties assessed by the City against the Property throughout 2022 and 2023.

59. Based upon information and belief, EEC alleges that in spite of the Loan Documentation and DYUPIN's alleged priority position as a "secured lender," OASIS has paid

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1   nothing to DYUPIN to pay down the "loan" at any point such that at the present time, DYUPIN

2   purportedly claims that he is owed over $6 million by OASIS, while the Property's value is

3   believed to be significantly less than $6 million.

4       60.    In spite of this, based upon information and belief, DYUPIN has made no attempt

5   to foreclose upon the Loan, which supports EEC's allegation that DYUPIN is not a bona fide

6   lender, considering bona fide lenders typically foreclose on property held as collateral for a loan

7   after not receiving a single payment in satisfaction of "loaned" funds and/or when a borrower

8   allows property held as collateral to fall into disrepair, thus reducing its value and ability for a

9   lender to recover the funds extended as principal.

10      61.    Based upon information and belief, OASIS claims that it is presently insolvent

11  (despite its prior representation to EEC of having $30 million in "M&A Assets"), has no cash, yet

12  is somehow, at the present time, proactively working to rehabilitate the Property with plans of

13  selling it and transmitting all proceeds from the sale of the Property to "DYUPIN," in Moscow, in

14  order to avoid payments to its creditors, including EEC.

## VI.

### FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

### (EEC v. OASIS, A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1-50, inclusive)

18      62.    EEC incorporates herein the allegations contained in each and every paragraph

19  above, inclusive, with the same force and effect as though fully set forth herein.

20      63.    On or about January 4, 2021, EEC and OASIS, and A. KUKUSHKIN, F.

21  KUKUSHKIN, and DOES 1-50, as alter egos of OASIS, entered a written valid contract for EEC

22  to serve as the general contractor on the Project.

23      64.    EEC performed the work, which OASIS, and A. KUKUSHKIN, F. KUKUSHKIN,

24  and DOES 1-50, as alter egos of OASIS, received the benefit of and never paid for.

25      65.    OASIS, and A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1-50, as alter egos of

26  OASIS, materially breached the Agreement as a result of their actions detailed herein.

27      66.    As a proximate cause of OASIS, and A. KUKUSHKIN, F. KUKUSHKIN, and

28  DOES 1-50, as alter egos of OASIS's,  breach of the Agreement, EEC has been damaged in an

1  amount of at least $563,780.79, but subject to proof at trial.

2    67.    EEC is further entitled to pre-judgment interest on these damages at the contract

3  rate of eighteen percent (18%) per annum pursuant to the Agreement from December 1, 2021,

4  until Judgment is entered.

5    68.    EEC is further entitled to recover reasonable attorney fees incurred in prosecuting

6  this cause of action, pursuant to Civ.C. §1717.

7    69.    EEC is further entitled to recover reasonable costs incurred in prosecuting this

8  cause of action.

9

10                                         **VII.**

11  **SECOND CAUSE OF ACTION FOR COMMON COUNT (GOODS AND SERVICES RENDERED)**

12  **(EEC v. OASIS, A. KUKUSHKIN, F. KUKUSHKIN, and DOES 1-50, inclusive)**

13    70.    EEC incorporates herein the allegations contained in each and every paragraph

14  above, inclusive, with the same force and effect as though fully set forth herein.

15    71.    EEC provided labor and material to and OASIS, and A. KUKUSHKIN, F.

16  KUKUSHKIN, and DOES 1-50, as alter egos of OASIS, at their special request and instance.

17    72.    The reasonable value and labor provided to OASIS, and A. KUKUSHKIN, F.

18  KUKUSHKIN, and DOES 1-50, as alter egos of OASIS, at their request is $563,780.79.

19    73.    EEC demanded that OASIS, and A. KUKUSHKIN, F. KUKUSHKIN, and DOES

20  1-50, as alter egos of OASIS, pay the reasonable value of its services; however they failed and

21  refused to pay for labor and material rendered on their behalf.

22    74.    As a direct and proximate result of OASIS, and A. KUKUSHKIN, F.

23  KUKUSHKIN, and DOES 1-50, as alter egos of OASIS, failure to pay for the labor and materials

24  they have requested, EEC has been damaged in the sum of $563,780.79 which represents the

25  reasonable value of labor and material provided.

26    75.    EEC is further entitled to pre-judgment interest on these damages at the contract

27  rate of ten percent (10%) per annum from December 1, 2021, until Judgment is entered.

28    76.    EEC is further entitled to recover reasonable costs that it incurs in this action.

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

## VIII.

## THIRD CAUSE OF ACTION FOR FRAUD (INTENTIONAL MISREPRESENTATION)

### (EEC v. All Defendants)

77.     EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

78.     DEFENDANTS, and each of them, individually and as a conspiracy, were responsible for making the following intentional misrepresentations to EEC: 1) The funding that OASIS retained in order to finance the Project was sufficient to complete the Project and the Loan Documents were otherwise not a sham; 2) OASIS would pay EEC for the work that OASIS asked EEC to perform in connection with the Project; 3) The condition and value of the Property, in conjunction with "$30 million in "M&A Assets" would be sufficient to pay for EEC's work.

79.     DEFENDANTS' misrepresentations were false at the time they made them.

80.     At the time DEFENDANTS made these false misrepresentations, they knew them to be false.

81.     EEC reasonably relied upon these false representations to its detriment and to the significant harm of itself.

82.     As a proximate cause of DEFENDANTS' intentional misrepresentations, EEC has been damaged in an amount of at least $563,780.79, but subject to proof at trial.

83.     EEC is also entitled to punitive damages against DEFENDANTS because the actions described above constitute malice, oppression, and/or fraud.

84.     EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

85.     EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

/ / /

/ / /

/ / /

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

# IX.

## FOURTH CAUSE OF ACTION FOR FRAUD (CONCEALMENT)

### (EEC v. All Defendants)

86.     EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

87.     DEFENDANTS, and each of them, individually and as a conspiracy, were responsible for concealing the following facts from EEC: 1) The funding that OASIS retained in order to finance the Project was insufficient to complete the Project and the Loan Documents were a sham; 2) OASIS could not pay EEC for the work that OASIS asked EEC to perform in connection with the Project; 3) The condition and value of the Property, in conjunction with "$30 million in "M&A Assets" was insufficient to pay for EEC's work. 5) A. KUKUSHKIN and DOES 1 to 50 was under federal indictment in connection with the Criminal Case and, if A. KUKUSHKIN and DOES 1 to 50 were convicted, OASIS would thereafter refuse to pay for the work that EEC performed in connection with the Project.

88.     EEC was unaware of these concealed facts at the time DEFENDANTS concealed them from EEC.

89.     DEFENDANTS intended to deceive EEC by concealing these facts from EEC.

90.     Had DEFENDANTS disclosed this omitted information, EEC would not have taken the Project on, continued to provide work, or otherwise suffered damages in $563,780.79.

91.     DEFENDANTS' concealment was a substantial factor in causing EEC's harm.

92.     As a proximate cause of DEFENDANTS' concealment, EEC has been damaged in an amount of at least $563,780.79, but subject to proof at trial.

93.     EEC is also entitled to punitive damages against DEFENDANTS because the actions described above constitute malice, oppression, and/or fraud.

94.     EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

95.     EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

**COMPLAINT**

**X.**

**FIFTH CAUSE OF ACTION FOR PROMISSORY FRAUD**

**(EEC v. All Defendants)**

96.     EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

97.     At all times mentioned herein, DEFENDANTS made promises to EEC regarding their intention to pay for the work that EEC performed in connection with the Project.

98.     DEFENDANTS intended that EEC rely on its foregoing promises to pay for the work that OASIS requested and EEC performed.

99.     In reliance on these promises, which were false, EEC performed work in connection with the Project for DEFENDANTS' sole use and benefit.

100.     Notwithstanding, DEFENDANTS have failed to pay for the work that EEC performed in connection with the Project.

101.     As a proximate cause of DEFENDANTS' false promises, EEC has been damaged in an amount of at least $563,780.79, but subject to proof at trial.

102.     EEC is also entitled to punitive damages against DEFENDANTS because the actions described above constitute malice, oppression, and/or fraud.

103.     EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

104.     EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

**XI.**

**SIXTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

**(EEC v. All Defendants)**

105.     EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

106.     DEFENDANTS were responsible for making the following negligent misrepresentations to EEC: 1) The funding that OASIS retained in order to finance the Project was

15

**COMPLAINT**

sufficient to complete the Project and the Loan Documents were otherwise not a sham; 2) OASIS would pay EEC for the work that OASIS asked EEC to perform in connection with the Project; 3) The condition and value of the Property, in conjunction with "$30 million in "M&A Assets" would be sufficient to pay for EEC's work.

107.    When DEFENDANTS made these representations, they had no reasonable grounds for believing the representations were true and intended for EEC to rely on these representations.

108.    EEC reasonably relied upon these negligent representations.

109.    As a proximate cause of DEFENDANTS' negligent misrepresentations, EEC has been damaged in an amount of at least $563,780.79, but subject to proof at trial.

110.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

111.    EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

## XII.

## SEVENTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST

### (EEC v. All Defendants)

112.    EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

113.    EEC holds an equitable interest in the Property and/or any proceeds from OASIS's subsequent sale of the Property, either directly or equitably as a result of DEFENDANTS' request that EEC continued to perform work, that it was adequately funded to pay for all work that it asked EEC to perform, and as a result of the sham nature of the Loan Documents, which establish a cloud on the title of the Property.

114.    For these reasons, EEC is entitled to an order from the Court that the DEFENDANTS hold the Property in constructive trust for benefit of EEC in the amount of $563,780.79, but subject to proof at trial.

115.    EEC prays for relief through the Court's determination of the title of the Property, equitably and legally, as against the claims of DEFENDANTS and any and all adverse claims to

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**

be held in constructive trust for EEC unless and until DEFENDANTS are ordered to remove Trust Deed currently clouding title to the Property and establish EEC's superior rights against the Property and/or any sales proceeds that result from the sale of the Property for the work of improvement that EEC performed at DEFENDANTS' request and insistence.

116.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

117.    EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

## XIII.

## EIGHTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (EEC v. All Defendants)

118.    EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

119.    An actual controversy exists as to the Parties' rights, obligations and duties with respect to the Property, including the legitimacy of the Loan Documents and priority of lien claims against the Property.

120.    EEC requests the Court to render a Judgment declaring the lien purportedly established by the Recorded Trust Deed as a fraud and sham and order it released to protect the rights of EEC and the subcontractors that hired to perform work at the Property, at DEFENDANTS' request.

## XIV.

## NINTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER [CIV.C §3439.04(a)(1)]

### (EEC v. All Defendants)

121.    EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

122.    Civ.C. §3439.04(a)(1) provides, in relevant part, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**

the obligation.... (1) With actual intent to hinder, delay, or defraud any creditor of the debtor."

123.    SYH is a creditor of OASIS.

124.    DEFENDANTS recorded the Trust Deed against the Property as a sham lien in favor of DYUPIN for inadequate consideration (OASIS failed to deliver DYUPIN a single payment in satisfaction of the "Loan") and for the purposes of avoiding its creditors, including EEC.

125.    DEFENDANTS did not receive reasonably equivalent value in exchange for establishing and recording the Recorded Trust Deed on the Property.

126.    At the time that DEFENDANTS made these transfers, OASIS was undercapitalized and was engaged in a business for which the remaining assets of OASIS after the transfer was unreasonably small.

127.    The transfers described above were to an insider of OASIS.

128.    DEFENDANTS made the transfers with the intent to hinder, delay and defraud creditors, including EEC.

129.    As a consequence, DEFENDANTS' transfer of the funds and properties described above was actually fraudulent pursuant to Civ.C. §3439.04(a)(1).

130.    EEC is entitled to an award of economic damages equivalent to the value of the transferred property according to proof (but no less than $563,780.79), as well as such other provisional relief for fraudulent transfers as permitted by Civ.C. §3439.07.

131.    EEC is entitled to an order avoiding the Recorded Trust Deed from OASIS and in favor of DYUPIN pursuant to Civ.C. §3439.07.

132.    EEC is entitled to an injunction against further disposition by DEFENDANTS or a transferee, or both, of the Property of the transferee pursuant to Civ.C. §3439.07.

133.    SYH is entitled to the appointment of a Receiver to take charge of the Property pursuant to Civ.C. §3439.07.

134.    SYH is further entitled to punitive damages against DEFENDANTS because their acts constituted malice, oppression, and fraud.

135.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**

1   seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

2   136.   EEC is further entitled to recover reasonable costs incurred in prosecuting this

3   cause of action.

4

5   **XV.**

6   **TENTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER**
    **[CIV.C §3439.04(a)(2)(A)]**

7   **(EEC v. All Defendants)**

8   137.   EEC incorporates herein the allegations contained in each and every paragraph

9   above, inclusive, with the same force and effect as though fully set forth herein.

10   138.   Civ.C. §3439.04(a)(2)(A) provides, in relevant part, "A transfer made or obligation

11   incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after

12   the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred

13   the obligation. . . (2) Without receiving a reasonably equivalent value in exchange for the transfer

14   or obligation, and the debtor . . . (A) Was engaged or was about to engage in a business or a

15   transaction for which the remaining assets of the debtor were unreasonably small in relation to the

16   business or transaction."

17   139.   SYH is a creditor of OASIS.

18   140.   DEFENDANTS recorded the Trust Deed against the Property as a sham lien in

19   favor of DYUPIN for inadequate consideration (OASIS failed to deliver DYUPIN a single

20   payment in satisfaction of the "Loan") and for the purposes of avoiding its creditors, including

21   EEC.

22   141.   DEFENDANTS did not receive reasonably equivalent value in exchange for

23   establishing and recording the Recorded Trust Deed on the Property.

24   142.   At the time that DEFENDANTS made these transfers, OASIS was undercapitalized

25   and was engaged in a business for which the remaining assets of OASIS after the transfer was

26   unreasonably small.

27   143.   The transfers described above were to an insider of OASIS.

28   144.   DEFENDANTS made the transfers with the intent to hinder, delay and defraud

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

19

**COMPLAINT**

creditors, including EEC.

145.    As a consequence, DEFENDANTS' transfer of the funds and properties described above was actually fraudulent pursuant to Civ.C. §3439.04(a)(1).

146.    EEC is entitled to an award of economic damages equivalent to the value of the transferred property according to proof (but no less than $563,780.79), as well as such other provisional relief for fraudulent transfers as permitted by Civ.C. §3439.07.

147.    EEC is entitled to an order avoiding the Recorded Trust Deed from OASIS and in favor of DYUPIN pursuant to Civ.C. §3439.07.

148.    EEC is entitled to an injunction against further disposition by DEFENDANTS or a transferee, or both, of the Property of the transferee pursuant to Civ.C. §3439.07.

149.    SYH is entitled to the appointment of a Receiver to take charge of the Property pursuant to Civ.C. §3439.07.

150.    SYH is further entitled to punitive damages against DEFENDANTS because their acts constituted malice, oppression, and fraud.

151.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

152.    EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

## XVI.

### ELEVENTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER [CIV.C §3439.04(a)(2)(B)]

### (EEC v. All Defendants)

153.    EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

154.    Civ.C. §3439.04(a)(2)(B) provides, in relevant part, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation. . . (2) Without receiving a reasonably equivalent value in exchange for the transfer

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

20

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1   or obligation, and the debtor . . . (B) Intended to incur, or believed or reasonably should have

2   believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

3       155.    SYH is a creditor of OASIS.

4       156.    DEFENDANTS recorded the Recorded Trust Deed against the Property as a sham

5   lien in favor of DYUPIN for inadequate consideration (OASIS failed to deliver DYUPIN a single

6   payment in satisfaction of the "Loan") and for the purposes of avoiding its creditors, including

7   EEC.

8       157.    DEFENDANTS did not receive reasonably equivalent value in exchange for

9   establishing and recording the Recorded Trust Deed on the Property.

10      158.    At the time that DEFENDANTS made these transfers, OASIS was undercapitalized

11  and was engaged in a business for which the remaining assets of OASIS after the transfer was

12  unreasonably small.

13      159.    The transfers described above were to an insider of OASIS.

14      160.    DEFENDANTS made the transfers with the intent to hinder, delay and defraud

15  creditors, including EEC.

16      161.    As a consequence, DEFENDANTS' transfer of the funds and properties described

17  above was actually fraudulent pursuant to Civ.C. §3439.04(a)(1).

18      162.    EEC is entitled to an award of economic damages equivalent to the value of the

19  transferred property according to proof (but no less than $563,780.79), as well as such other

20  provisional relief for fraudulent transfers as permitted by Civ.C. §3439.07.

21      163.    EEC is entitled to an order avoiding the Recorded Trust Deed from OASIS and in

22  favor of DYUPIN pursuant to Civ.C. §3439.07.

23      164.    EEC is entitled to an injunction against further disposition by DEFENDANTS or a

24  transferee, or both, of the Property of the transferee pursuant to Civ.C. §3439.07.

25      165.    SYH is entitled to the appointment of a Receiver to take charge of the Property

26  pursuant to Civ.C. §3439.07.

27      166.    SYH is further entitled to punitive damages against DEFENDANTS because their

28  acts constituted malice, oppression, and fraud.

**COMPLAINT**

167.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

168.    EEC is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

**XVII.**

**TWELFTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER [CIV.C. §3439.05]**

**(EEC v. All Defendants)**

169.    EEC incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

170.    Civ.C. §3439.05(a) provides, in relevant part, "A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

171.    SYH is a creditor of OASIS.

172.    DEFENDANTS recorded the Recorded Trust Deed against the Property as a sham lien in favor of DYUPIN for inadequate consideration (OASIS failed to deliver DYUPIN a single payment in satisfaction of the "Loan") and for the purposes of avoiding its creditors, including EEC.

173.    DEFENDANTS did not receive reasonably equivalent value in exchange for establishing and recording the Recorded Trust Deed on the Property.

174.    At the time that DEFENDANTS made these transfers, OASIS was undercapitalized and was engaged in a business for which the remaining assets of OASIS after the transfer was unreasonably small.

175.    The transfers described above were to an insider of OASIS.

176.    DEFENDANTS made the transfers with the intent to hinder, delay and defraud creditors, including EEC.

177.    As a consequence, DEFENDANTS' transfer of the funds and properties described

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

22

**COMPLAINT**

1    above was actually fraudulent pursuant to Civ.C. §3439.04(a)(1).

2        178.    EEC is entitled to an award of economic damages equivalent to the value of the

3    transferred property according to proof (but no less than $563,780.79), as well as such other

4    provisional relief for fraudulent transfers as permitted by Civ.C. §3439.07.

5        179.    EEC is entitled to an order avoiding the Recorded Trust Deed from OASIS and in

6    favor of DYUPIN pursuant to Civ.C. §3439.07.

7        180.    EEC is entitled to an injunction against further disposition by DEFENDANTS or a

8    transferee, or both, of the Property of the transferee pursuant to Civ.C. §3439.07.

9        181.    SYH is entitled to the appointment of a Receiver to take charge of the Property

10   pursuant to Civ.C. §3439.07.

11       182.    SYH is further entitled to punitive damages against DEFENDANTS because their

12   acts constituted malice, oppression, and fraud.

13       183.    EEC is further entitled to pre-judgment interest on these damages at the tort rate of

14   seven percent (7%) per annum from December 1, 2021, until Judgment is entered.

15       184.    EEC is further entitled to recover reasonable costs incurred in prosecuting this

16   cause of action.

17   **XVIII.**

18   **PRAYER FOR RELIEF**

19       WHEREFORE, EEC prays for Judgment and relief against DEFENDANTS, jointly and

20   severally, as follows:

21   **FIRST CAUSE OF ACTION:**

22       1.    For economic damages of $563,780.79, but subject to proof at trial;

23       2.    For pre-judgment interest at the rate of eighteen percent (18.00%) per annum from

24   December 1, 2021, until entry of Judgment;

25       3.    For costs and reasonable attorneys' fees pursuant to, without limitation, Cal. Civ.C.

26   §1717; and

27       4.    For such other and further relief as the Court deems just and proper.

28   / / /

**PURDY & BAILEY, LLP**
A Law Firm
12520 High Bluff Drive, Suite 220
San Diego, California 92130

23

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**SECOND CAUSE OF ACTION:**

    1.    For economic damages of $563,780.79, but subject to proof at trial;

    2.    For pre-judgment interest at the rate of ten percent (10.00%) per annum from December 1, 2021, until entry of Judgment;

    3.    For costs; and

    4.    For such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION:**

    1.    For economic damages of $563,780.79, but subject to proof at trial;

    2.    For punitive damages;

    3.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

    4.    For costs; and

    5.    For such other and further relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION:**

    1.    For economic damages of $563,780.79, but subject to proof at trial;

    2.    For punitive damages;

    3.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

    4.    For costs; and

    5.    For such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION:**

    1.    For economic damages of $563,780.79, but subject to proof at trial;

    2.    For punitive damages;

    3.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

    4.    For costs; and

    5.    For such other and further relief as the Court deems just and proper.

/ / /

**COMPLAINT**

**SIXTH CAUSE OF ACTION:**

    1.     For economic damages of $563,780.79, but subject to proof at trial;

    2.     For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

    3.     For costs; and

    4.     For such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION:**

    1.     For a constructive trust ordered against the Property and/or any sales proceeds that result from the sale of the Property;

    2.     For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

    3.     For costs; and

    4.     For such other and further relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION:**

    1.     For a judicial determination and/or declaration that the lien purportedly established by the Recorded Trust Deed recorded for DYUPIN as a fraud and sham and order it released to protect the rights of EEC and the subcontractors that hired to perform work at the Property, at DEFENDANTS' request;

    2.     For costs; and

    3.     For such other and further relief as the Court deems just and proper.

**NINTH CAUSE OF ACTION:**

    1.     For a declaration avoiding the Recorded Trust Deed;

    2.     For economic damages in an exact amount subject to proof, but no less than $563,780.79;

    3.     For provisional relief, as permitted by Civ.C. §3439.07;

    4.     For punitive damages;

    5.     For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**

6. For costs; and

7. For such other and further relief as the Court deems just and proper.

**TENTH CAUSE OF ACTION:**

1. For a declaration avoiding the Recorded Trust Deed;

2. For economic damages in an exact amount subject to proof, but no less than $563,780.79;

3. For provisional relief, as permitted by Civ.C. §3439.07;

4. For punitive damages;

5. For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

6. For costs; and

7. For such other and further relief as the Court deems just and proper.

**ELEVENTH CAUSE OF ACTION:**

1. For a declaration avoiding the Recorded Trust Deed;

2. For economic damages in an exact amount subject to proof, but no less than $563,780.79;

3. For provisional relief, as permitted by Civ.C. §3439.07;

4. For punitive damages;

5. For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

6. For costs; and

7. For such other and further relief as the Court deems just and proper.

**TWELFTH CAUSE OF ACTION:**

1. For a declaration avoiding the Recorded Trust Deed;

2. For economic damages in an exact amount subject to proof, but no less than $563,780.79;

3. For provisional relief, as permitted by Civ.C. §3439.07;

4. For punitive damages;

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**

5.      For pre-judgment interest at the rate of seven percent (7.00%) per annum from December 1, 2021, until entry of Judgment;

6.      For costs; and

7.      For such other and further relief as the Court deems just and proper.


**PURDY & BAILEY, LLP**


DATED: October 24, 2024            By:   /s/ Micah L. Bailey
                                              Micah L. Bailey
                                              Attorneys for ELECTRONIC ENVIRONMENTS
                                              CO, LLC, Plaintiff


## **DEMAND FOR JURY TRIAL**

EEC hereby demands a trial by jury.


**PURDY & BAILEY, LLP**


DATED: October 24, 2024            By:   /s/ Micah L. Bailey
                                              Micah L. Bailey
                                              Attorneys for ELECTRONIC ENVIRONMENTS
                                              CO, LLC, Plaintiff

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**COMPLAINT**